[Cite as *State v. Hayes*, 2023-Ohio-4119.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO                          :

    Plaintiff-Appellee,          :

                                No. 111927

    v.                           :

JAYMARLON HAYES,                       :

    Defendant-Appellant.         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** MODIFIED AND REMANDED
**RELEASED AND JOURNALIZED:** November 16, 2023

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-21-660865-A, CR-21-665938-A,
CR-22-666541-A, and CR-22-667269-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Eric Collins and Kristen Hatcher, Assistant Prosecuting Attorneys, *for appellee*.

James E. Valentine, *for appellant*.

ANITA LASTER MAYS, A.J.:

{¶ 1} Defendant-appellant Jaymarlon Hayes ("Hayes") appeals the trial court's imposition of consecutive sentences for multiple counts arising from several

cases to which he pleaded guilty. We affirm the convictions but remand the cases to the trial court to issue entries modifying the sentences pursuant to this opinion.

## I. Background and Facts

{¶ 2} Hayes was 18 years of age when the first act was committed, 19 years of age when the remaining offenses occurred, and 20 years old at the time of sentencing. Hayes has an IQ of 72, and a record of untreated mental health problems. The events underlying the first case took place on June 24, 2021, the second case on November 29, 2021, and the remaining two cases on December 2, 2021, and December 3, 2021. On June 28, 2022, Hayes pleaded guilty to various counts in the cases. Four of the counts were qualifying offenses under the Reagan Tokes Law, and Hayes was advised of that fact at the plea hearing. Defense counsel objected to the imposition of the Reagan Tokes Law arguing at the plea and sentencing hearings that the law is unconstitutional. On August 5, 2022, Hayes was sentenced to an aggregate term of 71 and one-half years. As sentenced, Hayes would be 91 years of age upon release.

{¶ 3} In Cuyahoga C.P. No. CR-21-660865-A, on or about June 24, 2021, Hayes took his friend to the hospital for a gunshot wound. At some point, drugs were discovered in Hayes's car resulting in a ten-count indictment for possession and trafficking of controlled substances. On June 28, 2022, Hayes pleaded guilty to trafficking under R.C. 2925.03(A)(2), a low tier third-degree felony as charged in Count 3. The remaining counts were nolled. On August 5, 2022, Hayes was sentenced to a 24-month term to be served consecutively to the terms imposed in

the other three cases. Hayes had been released on a $5,000 personal bond in Cuyahoga C.P. No. CR-21-660865-A when the remaining three cases arose.

{¶ 4} In Cuyahoga C.P. No. CR-22-667269-A, at approximately 1:00 a.m. on November 29, 2021, Jennifer Johnson was sitting in her car waiting for a friend to come home. Hayes and codefendant Rontell Parks ("Parks"), bearing firearms, banged on the victim's car window, pulled her from the car, demanded her wallet, and departed with the vehicle. Hayes and Parks were charged with aggravated robbery with one- and three-year firearm specifications, robbery, grand theft, and two counts of theft. On June 28, 2022, Hayes pleaded guilty to aggravated robbery R.C. 2911.01(A)(1), a first-degree felony with a one-year firearm specification under R.C. 2941.141, as amended in Count 1 of the indictment. The remaining counts were nolled. On August 5, 2022, Hayes was sentenced to a one-year firearm specification to be served prior and consecutive to the maximum prison term of 11 years on the base charge, and consecutive to the sentences in the other cases. The first-degree aggravated robbery count is a qualifying offense under the Reagan Tokes Law.

{¶ 5} In Cuyahoga C.P. No. CR-22-666541-A, on the evening of December 2, 2021, Hayes and Parks approached victim Nazir Clemons ("Clemons") who was sitting in his vehicle at 2802 Clark Avenue at approximately 7:00 p.m. Hayes pointed a gun at Clemons and instructed him to get out of the vehicle. Clemons exited the vehicle and handed the keys to Parks. Clemons was shot twice, and the two drove away in Clemons's vehicle. Hayes and Parks were indicted for one count of attempted murder, two counts of aggravated robbery, three counts of

robbery, two counts of felonious assault, one count of having weapons while under disability, and one count of grand theft. Nine of the ten counts carried one- and three-year firearm specifications.

{¶ 6} On June 28, 2022, Hayes pleaded guilty to one count of aggravated robbery, R.C. 2911.01(A)(1), a first-degree felony, with a three-year firearm specification, R.C. 2941.145, as amended in Count 2; one count of felonious assault, R.C. 2903.11(A)(1), a second-degree felony, with a three-year firearm specification, R.C. 2941.145, as amended in Count 7; having a weapon while under disability, R.C. 2923.13(A)(3), a third-degree felony, as charged in Count 9; and one count of grand theft of a motor vehicle, R.C. 2913.02(A)(1), a fourth-degree felony, as amended in Count 10 of the indictment. The first-degree aggravated robbery and the second-degree felonious assault are qualifying offenses under the Reagan Tokes Law. Counts 1, 3, 4, 5, 6, and 8 were nolled.

{¶ 7} On August 5, 2022, Hayes was sentenced to the maximum term of 11 years for aggravated robbery with a three-year firearm specification, an eight-year maximum term for felonious assault with a three-year firearm specification, and a maximum three-year term for having a weapon while under disability. The grand theft count merged with the aggravated robbery charge. The aggregate 28-year sentence was to be served consecutively to the sentences in the other cases.

{¶ 8} Finally, in Cuyahoga C.P. No. CR-21-665938-A, on the afternoon of December 3, 2021, Hayes was driving the stolen vehicle to the home of Hayes's fiancée to drop off infant formula for their child. Solon police observed the vehicle

proceeding on Solon Road, checked the plates, and discovered the vehicle was stolen. Hayes pulled into a driveway and successfully evaded police attempts to block it. Solon and Bentleyville police engaged in a car chase involving vehicle speeds exceeding 80 miles per hour until Hayes swerved to avoid stop sticks deployed by police. Hayes lost control of the vehicle and struck two vehicles, one occupied by Paul Lilley ("Lilley") and a second vehicle occupied by Sally Schultz ("S. Schultz") and Norman Schultz ("N. Schultz"). S. Schultz complained of rib and stomach pain and died at the hospital later that day.

{¶ 9} On June 28, 2022, Hayes pleaded guilty to involuntary manslaughter, of S. Schultz, R.C. 2903.04(A), a first-degree felony, with a one-year firearm specification, R.C. 2941.141, as charged in Count 1; failure to comply with an order or signal of a police officer, R.C. 2921.331(B), a third-degree felony with a one-year firearm specification, R.C. 2941.141, as charged in Count 3; aggravated vehicular assault of N. Schultz and Lilley, R.C. 2903.08(A)(2)(B), a third-degree felony with a one-year firearm specification, R.C. 2941.141, as charged in Counts 4 and 5 of the indictment; and carrying concealed weapons, R.C. 2923.12(A)(2), as charged in Count 6 of the indictment. Count 2 was nolled.

{¶ 10} On August 5, 2022, Hayes was sentenced to the maximum term of 11 years for involuntary manslaughter, plus one-year gun specification, the maximum term of 36 months for failure to comply plus the one-year firearm specification, the maximum term of 60 months plus one-year firearm specification for each of the two aggravated vehicular assault counts, and a maximum term of 18 months for carrying

a concealed weapon for a total of 29 and one-half years to run consecutively to the other cases. The involuntary manslaughter count is a qualifying offense under the Reagan Tokes Law.

{¶ 11} The drug conviction arose from the incident that occurred on June 24, 2021, the second case on November 28, 2021, the third case on December 2, 2021, and the fourth on December 3, 2021. The state referred to the events of June 24, 2021, November 28, 2021, December 2, 2021, and December 3, 2021, as a crime spree. The state argued that Hayes's conduct was more serious than conduct normally constituting the offenses and urged the trial court to impose maximum, consecutive terms that totaled 71 and one-half years because of Hayes's heinous conduct. The sum included 11 years of firearm specifications.

{¶ 12} The defense requested a reasonable sentence and suggested 15 to 18 years. The defense explained that Hayes's determination to confess to the crimes and face the consequences should be considered. Hayes was hospitalized after the accident and transferred to a nursing home. Defense counsel was unable to visit because of COVID restrictions, but a guard allowed Hayes to use the guard's phone to finally speak with defense counsel. Hayes next contracted COVID and was in isolation until transferred to county jail without counsel's knowledge. Hayes admitted to the charges during an interview by a detective without a *Miranda* advisement. Counsel urged Hayes to seek suppression of the statement, but Hayes insisted on moving forward and taking responsibility for his actions.

{¶ 13} The defense also offered that Hayes possessed an IQ of 72 and attended seven schools before the eighth grade and six high schools. Hayes's father was incarcerated for most of Hayes's childhood, but his mother was a constant. Hayes's special education individualized education program failed to place him in classrooms where he could experience a degree of success. A referral to the Cuyahoga County Board of Developmental Disabilities was never completed so Hayes could receive needed counseling and medication for several mental health diagnoses.

{¶ 14} The defense produced the increasingly widely known data that juvenile brain development continues until the ages of 25 to 30 — sometimes beyond — and that the types of life events and conditions experienced by Hayes slows juvenile brain development. Finally, the defense stated that Hayes was remorseful and desired to participate in prison programs, complete his education, and eventually reunite with his daughter.

{¶ 15} The trial court noted the defense suggestion that Hayes had the potential to do good things and stated, "I hope that is true." However, "any good you do for a long time to come will be within the state prison." (Tr. 125-126.) The trial court added:

> You are going to have a very long time, Mr. Hayes, to carefully consider everything that you have done, the lives you affected, the life you took. You could be here on multiple murder charges had your driving been a little better, or had your driving rather been a little worse, or had your luck been a little worse.

You had the good fortune, if it can even be called that, that only one person died as a result of all of your crimes. There could have been more.

You must carefully consider all that you have done. You must resolve to make a better life for yourself in the years ahead of you. You must resolve to make good on the terrible things that you have done, the lives you affected, and to know that, although I am doing my best to mete out justice today, you will someday face judgment before a much higher court.

(Tr. 131-132.)

{¶ 16} As stated above, the imposed aggregate sentence is 71 and one-half years. The sentences included postrelease control, and recommendations for mental health counseling and to obtain a GED. Hayes was entitled to 245 days of jail-time credit at the time of sentencing.

## II. Assignment of Error

{¶ 17} Hayes poses a single assignment of error arguing that the trial court's imposition of consecutive sentences was clearly and convincingly contrary to law and unsupported by the record.

## III. Discussion

{¶ 18} It is axiomatic that a trial court may only impose sentences provided by statute, and R.C. 2929.14(C)(4) is an exception to the R.C. 2929.14(A) directive that multiple offenses "shall be served concurrently." *State v. Jones*, 2022-Ohio-4202, 201 N.E.3d 1003, ¶ 18-19 (8th Dist.), citing *State v. Williams*, 148 Ohio St.3d 403, 2016-Ohio-7658, 71 N.E.3d 234, ¶ 22, citing *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, ¶ 21-22.

{¶ 19} To impose consecutive sentences, the trial court must make the specific findings set forth in the statute: "consecutive service is necessary to protect the public from future crime or to punish the offender"; "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public."  R.C. 2929.14(C)(4).  At a minimum, one of the following is required:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

*Id.*

{¶ 20} R.C. 2953.08(G)(2)(a) provides the means for appellate challenges of consecutive sentences under R.C. 2929.14(C)(4).  *State v. Gwynne*, Slip Opinion No. 2022-Ohio-4607 ("*Gwynne IV*").[1]  The statute provides that "an appellate court

---

[1] This court is cognizant of the recent plurality opinion in *State v. Gwynne*, Slip Opinion No. 2023-Ohio-3851 ("*Gwynne V*"), rejecting on reconsideration the holding of *Gwynne IV* regarding appellate review of consecutive sentences under R.C. 2953.08(G)(2) and 2929.14(C)(4). "A plurality opinion is '[a]n opinion lacking enough judges' votes to constitute a majority but receiving more votes than any other opinion.' *Black's Law Dictionary* 1125 (8th Ed.2004).  A plurality opinion from this court has

may increase, reduce, or otherwise modify a sentence" or the court "may vacate and remand the case for resentencing." *Id.* These options are available only if the appellate court "clearly and convincingly" determines that the sentencing court's R.C. 2929.14(C)(4) findings are not supported by the record.

## A. *Gwynne IV*

{¶ 21} *Gwynne IV* recently addressed the standard and scope of appellate review of consecutive sentences. Gwynne was indicted for stealing items of monetary or sentimental value from elderly residents of nursing homes and assisted living facilities while working as a nurse's aide or posing as one over an eight-year period. Gwynne was indicted for 86 felony counts and 15 misdemeanors. *Id.* at ¶ 4.

{¶ 22} Gwynne pleaded guilty to 17 counts of second-degree burglary, four counts of third-degree theft, 10 counts of fourth-degree theft, and 15 misdemeanor counts of receiving stolen property. Gwynne was sentenced to "three years for each of the second degree-burglary offenses, 12 months for each of the fourth-degree theft offenses, and 180 days for each of the misdemeanor receiving-stolen-property offenses." *Id.* at ¶ 5. "The court made the findings required under R.C. 2929.14(C)(4) for imposing consecutive sentences and ordered the felony

---

'questionable precedential value inasmuch as it * * * fail[s] to receive the requisite support of four justices * * * in order to constitute controlling law.'" *Gwynne V* at ¶ 68, fn. 6, citing *Kraly v. Vannewkirk*, 69 Ohio St.3d 627, 633, 635 N.E.2d 323 (1994). "[A] plurality opinion is not binding authority." *Nascar Holdings, Inc. v. Testa*, 152 Ohio St.3d 405, 2017-Ohio-9118, 97 N.E.3d 414, ¶ 18, citing *Hedrick v. Motorists Mut. Ins. Co.*, 22 Ohio St.3d 42, 44, 488 N.E.2d 840 (1986), *overruled on other grounds*, *Martin v. Midwestern Group Ins. Co.*, 70 Ohio St.3d 478, 639 N.E.2d 438 (1994).

sentences to be served consecutively, making Gwynne's aggregate sentence 65 years." *Id.*

{¶ 23} In *State v. Gwynne*, 5th Dist. Delaware No. 16-CAA-12-0056, 2017-Ohio-7570 ("*Gwynne I*"), the court held that, while serious, the sentence did not "comport with the purposes and principles of felony sentencing" under "R.C. 2929.11 and 2929.12 and was plainly excessive and shocking for a nonviolent, first-time offender." *Gwynne IV,* Slip Opinion No. 2022-Ohio-4607, ¶ 6, citing *id.* at ¶ 22-30. However, the court agreed that consecutive sentences were warranted in some instances and modified the sentence, resulting in a 15-year aggregate term.

{¶ 24} The state appealed in *State v. Gwynne*, 158 Ohio St.3d 279, 2019-Ohio-4761, 141 N.E.3d 169 ("*Gwynne II*"), where the court reversed the appellate court's judgment. The court held that R.C. 2953.08(G)(2)(a) does not permit an appellate court to use an analysis of the R.C. 2929.11(A) and (B) principles and purposes of felony sentencing, and R.C. 2929.12 seriousness and recidivism factors to reverse or modify consecutive sentences. *Gwynne IV* at ¶ 2, citing *Gwynne II* at ¶ 13-18 (lead opinion) and ¶ 32-43 (Kennedy, J., concurring in judgment only).[2] *See Gwynne II* at ¶ 2, citing *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59

---

[2] The court also noted that its conclusion in *Gwynne II* was upheld in *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649. "R.C. 2953.08 (G)(2)(b) * * * does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12." *Gwynne III* at ¶ 7, fn. 1., quoting *id.* at ¶ 39.

N.E.2d 1231, "has no application to consecutive-sentencing cases that are governed by R.C. 2953.08(G)(2)." *Gwynne IV* at ¶ 2.[3]

{¶ 25} The appellate court was directed to apply the R.C. 2953.08(G)(2)(a) standard of review that "permits reversal or modification of consecutive sentences if the reviewing court clearly and convincingly finds that the record does not support the sentencing court's R.C. 2929.14(C)(4) findings." *Gwynne IV*, citing *Gwynne II* at ¶ 20 (lead opinion).

{¶ 26} The appellate court did not abandon its belief that the sentence was "'wholly excessive * * * for a first-time felony offender'" but "'reluctantly upheld the 65-year sentence after concluding that 'no authority exists for this court to vacate some, but not all of Gwynne's consecutive sentences.'" *Gwynne IV*, Slip Opinion No. 2022-Ohio-4607, at ¶ 8, quoting *State v. Gwynne*, 2021-Ohio-2378, 173 N.E.3d 603, ¶ 25 (5th Dist.) ("*Gwynne III*"). The Fifth District determined that the sentences were not "'grossly disproportionate or shocking to the community's sense of justice'" or "'shocking to a reasonable person'" because the sentences were "'within the range of penalties authorized by the legislature.'" *Id.*, quoting *Gwynne III* at ¶ 30.

---

[3] This court does not construe the court's instruction to bar consideration of relevant factors that may overlap the R.C. 2929.11, 2929.12, and 2929.14(C)(4) analyses. "[T]here may be significant overlap in the factors identified in R.C. 2929.11, 2929.12, and 2929.14(C)(4) respectively." *State v. Moore*, 12th Dist. Clermont No. CA2013-06-044, 2014-Ohio-765, ¶ 9, citing *State v. Marshall*, 12th Dist. Warren No. CA2013-05-042, 2013-Ohio-5092, ¶ 17, 20.

{¶ 27} In *Gwynne IV*, the Ohio Supreme Court was "asked to determine whether Gwynne's 65-year aggregate sentence for numerous nonviolent felonies violates Ohio's consecutive-sentencing statute, R.C. 2929.14(C)." *Gwynne IV*, Slip Opinion No. 2022-Ohio-4607, at ¶ 1.[4] The court recognized that it must first provide much-needed clarification to Ohio courts on two pivotal issues for consecutive-sentence imposition and review and apply the solutions to the proposition posed.

{¶ 28} The first issue was "whether trial courts must consider the overall aggregate prison term to be imposed when making the consecutive-sentence findings under R.C. 2929.14(C)(4)." *Id.* The court confirmed that a trial court "must consider the number of sentences that it will impose consecutively along with the defendant's aggregate sentence that will result" when making the R.C. 2929.14(C)(4) findings. *Id.* at ¶ 12. The findings "must be made in consideration of the aggregate term to be imposed" and they "are not simply threshold findings that * * * permit any amount of consecutively stacked individual sentences." *Id.*

{¶ 29} The second issue addressed by the court was the "scope of an appellate court's authority" "under R.C. 2953.08(G)(2) to review [the trial court's findings for] consecutive sentences." *Gwynne IV*, Slip Opinion No. 2022-Ohio-4607, at ¶ 1. The court directed that an appellate court's review of the record to determine whether the trial court's R.C. 2929.14(C)(4) findings are clearly and

---

[4] Appellant Gwynne also argued throughout the *Gwynne* cases that the sentence violated the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution. That issue was dismissed in *Gwynne IV* as having been improvidently accepted. *Id.* at ¶ 2.

convincingly supported by the record is de novo. *Id*. The court emphasized that deference to the trial court's findings is not appropriate or required.

{¶ 30} "R.C. 2953.08(F) explains what the 'record' entails for purposes of appellate review of consecutive sentences."

> Specifically, it entails any of the following that may be applicable: written presentence, psychiatric, or other investigative reports submitted to the trial court prior to sentencing; the trial court record in the case in which the sentence was imposed; any oral or written statements made to or by the court at sentencing; and any written findings the court was required to make in connection with a grant of judicial release. R.C. 2953.08(F)(1)-(4).

*Gwynne IV* at ¶ 28, fn. 6.

{¶ 31} However, it is important for an appellate court to note that even where the appellate record is not well developed due, for example, to a guilty or no contest plea, the appellate court's responsibility does not change. "Regardless of the size of the record, there must still be enough evidence contained within it in terms of both quantity and quality, to support the consecutive-sentence findings" "and satisfy the appellate court that the standard for reversal or modification outlined in R.C. 2953.08(G)(2) is not met." *Gwynne IV*, Slip Opinion No. 2022-Ohio-4607, at ¶ 29, fn. 7.

{¶ 32} *Gwynne IV* did not abandon its definition of the clear-and-convincing-evidence standard embraced in *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, where it stated:

> "'Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt'

in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'

*Gwynne IV* at 19, quoting *id*. at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 33} *Gwynne IV* illuminated the importance of understanding the distinction between standards of review and evidentiary standards of proof. The former, such as an "'abuse of discretion,' 'clearly erroneous,' and 'substantial evidence' are traditional forms of appellate court deference that are applied to trial court decisions." *Gwynne IV* at ¶ 20. As "standards of review," they are "screens through which reviewing courts must view the original factfinder's decision." *Id*. "'[P]reponderance,' 'clear and convincing,' and 'beyond a reasonable doubt' are evidentiary standards of proof" that "apply to a fact-finder's consideration of the evidence." *Id*. at ¶ 20.

{¶ 34} Of import here, "R.C. 2953.08(G)(2)'s requirement that appellate courts apply the clear-and-convincing standard" indicates that the appellate court essentially functions as a finder of fact "with three key differences." *Id*. at ¶ 20-21.

{¶ 35} First, the appellate court is limited to "considering only the findings in R.C. 2929.14(C)(4) that the trial court actually made" and "cannot determine for itself which of the three permissible findings * * * might apply * * * as the trial court is permitted to do." *Gwynne IV*, Slip Opinion No. 2022-Ohio-4607, at ¶ 21.

{¶ 36} Second, the appellate court's standard of proof is clear and convincing evidence versus the trial court's "more likely true, or more probably, than not" when

considered as a whole preponderance-of-the-evidence standard. *Id.* Third and inversely as to the second difference, the appellate court must possess a "firm belief or conviction that the proposition of fact represented by each finding is not true on consideration of the evidence in the record." *Id.*

{¶ 37} The court emphasized that the higher evidentiary standard of clear and convincing "'does not mean clear and *unequivocal.*'" (Emphasis sic.) *Id.* at ¶ 23, citing *Ledford*, 61 Ohio St. at 477, 120 N.E.2d 118. "[A]gain, it means only a firm belief or conviction." *Gwynne IV*, Slip Opinion No. 2022-Ohio-4607, citing *id.* and *Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, at ¶ 22.

{¶ 38} In recognition of the "complex history of R.C. 2929.14(C) and 2953.08(G)(2)," the court also provided "practical guidance" for consecutive-sentence reviews. *Id.* at ¶ 24.

### 1. Step one

{¶ 39} The appellate court must verify that each of the R.C. 2929.14(C)(4) findings have been made. The consecutive-sentence order is contrary to law if the trial court fails to make all of the findings. The appellate court may modify the sentence or vacate it and remand for resentencing. *Gwynne IV*, Slip Opinion No. 2022-Ohio-4607, at ¶ 25, citing *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 36-37; *see also State v. Jones*, 93 Ohio St.3d 391, 399, 754 N.E.2d 1252 (2001), *abrogated on other grounds*, *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470; R.C. 2953.08(G)(2)(b).

## 2. Step Two

{¶ 40} "[I]f even one" of the findings is not supported by clear and convincing evidence in the record under R.C. 2953.08(G)(2), the appellate court "must" modify or vacate the sentence. *Gwynne IV*, Slip Opinion No. 2022-Ohio-4607, at ¶ 25-26. This includes the number of consecutive terms and the aggregate sentence. Unequivocal certainty that the record does not support the findings is not required. Vacation or modification is required if the court has a firm belief or conviction that the findings are unsupported. *Id*. at ¶ 27. The appellate court must consider whether there is "some evidentiary support in the record" for the findings, review the evidence, and determine whether it is supported. The order must be reversed if the record is "devoid of evidence." *Id*. at ¶ 28.

{¶ 41} Where some evidence is present, the appellate court considers the quality and quantity of the evidence contained in the record "that either supports or contradicts" the findings. Where the appellate record is minimal such as a sentence arising from a guilty plea, "[a]n appellate court may not * * * presume that because the record contains some evidence relevant to and not inconsistent with the consecutive-sentence findings" that the "evidence is enough to fully support the findings." *Id*. at ¶ 29. "R.C. 2953.08(G)(2) explicitly rejects this type of deference to a trial court's consecutive-sentence findings." *Id*.

{¶ 42} The appellate court is authorized to substitute its judgment for that of the trial court where, after a review of the entire record, it has a "firm conviction or belief" that the evidence does not support the trial court's "specific findings

made * * * to impose consecutive sentences." *Id.* This includes support for the "number of consecutive terms and the aggregate sentence that results." *Id.* In fact, an appellate court has the authority to "vacate some — but not all — of the consecutive sentences" imposed by the trial court. *Id.* at ¶ 17.

### B. *Gwynne IV* instant case application

### 1. Step One — R.C. 2929.14(C)(4) findings

{¶ 43} "[N]o statute directs a sentencing court to give or state reasons supporting imposition of consecutive sentences" nor does Crim.R. 32(A)(4) require a trial court "to give reasons supporting its decision to impose consecutive sentences." *Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, at ¶ 27.

{¶ 44} The parties do not dispute that the findings were made on the record except that one judgment entry requires a nunc pro tunc order where the consecutive-sentence findings were omitted. We therefore move to step 2 of the analysis.

### 2. Step Two — Clear and Convincing Support

{¶ 45} This court reviews the record de novo to determine whether there is clear and convincing evidence in the record to support the trial court's findings. If there is no evidence to support the findings, this court must reverse. If any evidence is found to exist, this court focuses on the "quantity and quality of the evidence * * * that either supports or contradicts the consecutive-sentence findings." *Gwynne IV*, Slip Opinion No. 2022-Ohio-4607, at ¶ 29. Even where the record is slight as with

a no contest or guilty plea, there must still be quantitative and qualitative evidence to support the trial court's findings. *Id.* at ¶ 29, fn. 7.

{¶ 46} Where this court holds "a firm conviction or belief, after reviewing the entire record, that the evidence does not support the specific findings by the trial court to impose consecutive sentences," this court is authorized to substitute its judgment for that of the trial court. This includes modifying or reversing the "number of consecutive terms and the aggregate sentence that results." *Id.* at ¶ 29.

{¶ 47} We keep in mind that R.C. 2953.08(G)(2) does not permit an appellate court to use the R.C. 2929.11(A) and (B) principles and purposes of felony sentencing and the R.C. 2929.12 seriousness and recidivism factors to reverse or modify consecutive sentences. *Gwynne IV* at ¶ 7, citing *Gwynne II* at ¶ 13-18. We also recognize that the factors often overlap. Moore, 12th Dist. Clermont No. CA2013-06-044, 2014-Ohio-765, ¶ 9, citing *Marshall*, 12th Dist. Warren No. CA2013-05-042, 2013-Ohio-5092, ¶ 17, 20.

{¶ 48} At the request of the state, the trial court made the R.C. 2929.14(C)(4) consecutive findings for the record:

> I am ordering that the Defendant serve his prison term consecutively because I find that consecutive service is necessary to protect the public from future crime and to adequately punish the offender.
>
> I further find consecutive sentences are not disproportionate to the seriousness of the Defendant's conduct and to the danger the Defendant still poses to the public pursuant to Revised Code 2929.14(C)(4).
>
> Specifically I further find that the Defendant committed at least two of his multiple offenses as part of one or more courses of conduct. Not as

spread across all four cases as the defense suggests, but specifically in case 665938, and the harm caused by two or more of the multiple offenses thus committed was so great or unusual, no single prison term for any of the offenses committed as part of any of the courses of conduct spread across these four cases would adequately reflect the seriousness of the Defendant's conduct. [R.C. 2929.14(C)(4)(b)].

I further note the Defendant's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crimes by the Defendant. [R.C. 2929.14(C)(4)(c)].

(Tr. 133-134.) The trial court also chose to impose consecutive time as to each gun specification "given [Hayes's] appalling course of criminal conduct spread across these four cases spread across five days." (Tr. 136.)

{¶ 49} Consecutive sentences "'are reserved for the worst offenses and offenders.'" *State v. Glover*, 1st Dist. Hamilton No. C-220088, 2023-Ohio-1153, ¶ 75, applying *Gwynne IV*, quoting *State v. Comer*, 99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473. The trial court stated that "consecutive sentences are not disproportionate to the seriousness of" Hayes's "conduct and to the danger" Hayes "still poses to the public." Based on a thorough review of the record, we disagree that the evidence supports the proportionality finding for the consecutive sentences imposed. R.C. 2929.14(C)(4). Further, the sentence is disproportionate to sentences given by other courts of this state. *See Glover*, 1st Dist. Hamilton No. C-220088, 2023-Ohio-1153, at ¶ 77, quoted *infra* at ¶ 56.

{¶ 50} "A proportionality analysis considers both the defendant's current conduct and the risk of the defendant being a danger in the future." *Glover*, 1st Dist. Hamilton No. C-220088, 2023-Ohio-1153, ¶ 26, citing R.C. 2929.14(C)(4). "To

make that determination, the analysis 'focuses upon the defendant's current conduct and whether this conduct, in conjunction with the defendant's past conduct, allows a finding that consecutive service is not disproportionate.'" *Id*. at ¶ 87, quoting *State v. Crim*, 2d Dist. Clark No. 2018-CA-38, 2018-Ohio-4996, ¶ 11; citing *State v. Mathis*, 6th Dist. Lucas No. L-21-1249, 2022-Ohio-4020, ¶ 19 (same); *State v. Forsell*, 11th Dist. Portage Nos. 2019-P-0116, 2019-P-0117, 2019-P-0118, 2019-P-0119, 2019-P-0120, 2019-P-0121, 2019-P-0122, 2019-P-0123 and 2019-P-0124, 2020-Ohio-5381, ¶ 26.

{¶ 51} This court agrees that Hayes should be punished. However, we do not agree that the evidence supports Hayes's permanent removal from society.

{¶ 52} In *Glover*, 1st Dist. Hamilton No. C-220088, 2023-Ohio-1153, the 20-year-old was convicted of six counts of aggravated robbery and five counts of kidnapping, all with firearm specifications, for robbing and kidnapping five different individuals at gunpoint. He was sentenced to seven years plus three-year gun specifications in each case, for a total of 60 years. Based on *Gwynne IV*, the appellate court held that the proportionality factor was not satisfied and modified the sentence.

{¶ 53} The "use of an offender's juvenile history is generally reserved for instances where the offender's history is extensive." *Glover*, 1st Dist. Hamilton No. C-220088, 2023-Ohio-1153, ¶ 88, citing *State v. Batiste*, 2020-Ohio-3673, 154 N.E.3d 1220, ¶ 20 (8th Dist.), *State v. Jones*, 2022-Ohio-4202, 201 N.E.3d 1003 ¶ 32 (8th Dist.). The *Glover* Court first considered that Glover had one juvenile

adjudication for Toledo Municipal Code 537.16, "assault upon a teacher; disrupting school activity" and prohibited a broad area of conduct including "disrupt[ing], disturb[ing] or interfer[ing] with the class or any activity conducted on the school grounds or any public place." No facts regarding the incident were included in the record, yet the trial court considered it an act of violence.

{¶ 54} In the instant case, the trial court stated that Hayes has a juvenile record. It is true that Hayes has had juvenile delinquency adjudications with the majority of offenses nolled. There are no facts that explain the grounds for the adjudications.

{¶ 55} Also under the proportionality analysis, the *Glover* Court listed a selection of Ohio cases where the offender was convicted of crimes that caused emotional and physical harm with aggregate sentences shorter than the 60-year aggregate sentence received by Glover. The sentences are also shorter than that received by Hayes in the instant case.

{¶ 56} Cases included

> *State v. McRae*, 1st Dist. Hamilton No. C-180669, 2020-Ohio-773, ¶ 5 (court sentenced defendant on two counts of attempted murder of police officers, two counts for having a weapon while under a disability, one count of carrying a concealed weapon, and assault; his aggregate sentence was 43.5 years); *State v. Patton*, 1st Dist. Hamilton No. C-190694, 2021-Ohio-295, ¶ 2 (defendant convicted of two counts of murder with specifications; aggregate sentence was 24 years to life); *State v. Prescott*, 8th Dist. Cuyahoga Nos. 107784 and 107789, 2019-Ohio-5114, ¶ 2 (defendant convicted of 14 counts each of aggravated robbery and kidnapping, all with gun specifications, for eight separate events; one victim was pistol whipped, causing serious injuries, and another victim was punched in the face; court imposed aggregate 25-year sentence); *State v Washington*, 6th Dist. Lucas No. L-19-1190,

2021-Ohio-760, ¶ 4, 10, 15 (trial court sentenced defendant who brutally raped and assaulted two women to aggregate 28-year sentence); *State v Corey*, 11th Dist. Geauga No. 2021-G-0029, 2022-Ohio-4568, ¶ 15 (defendant who shot victim four times was convicted of attempted murder, firearm specifications, and tampering with evidence; trial court sentenced him to aggregate term of ten-15 years); *State v. Galinari*, 1st Dist. Hamilton No. C-210149, 2022-Ohio-2559, at ¶ 2, 4 (defendant attacked a teenager and an adult with an aluminum bat; trial court sentenced him to an aggregate 13-year term); *Ohio v. Jones*, 2d Dist. Montgomery No. 28977, 2021-Ohio-3050, ¶ 1 (defendant broke into three women's homes, raped two of the women by gunpoint, and forced one to take fentanyl; after jury convicted the defendant of aggravated burglary with a deadly weapon, aggravated burglary causing physical harm, two counts of rape, two counts of kidnapping, and one count of aggravated robbery with a deadly weapon, the court sentenced him to an aggregate term of 39 years); * * * *State v. Consiglio*, 7th Dist. Mahoning No. 21 MA 0066, 2022-Ohio-2340, ¶ 1-2 (defendant convicted of rape, attempted rape, aggravated robbery, robbery, theft from a person in a protected class, and domestic violence against his 79-year-old grandmother, plus assaulting a police officer; court merged allied offenses and sentenced him to indefinite term of 19.5 to 25 years' incarceration); *State v. Steele*, 5th Dist. Delaware No. 21 CAA 11 0061, 2022-Ohio-712, ¶ 1 (court sentenced defendant convicted by a jury of five counts of unlawful sexual conduct with a minor, two counts of rape, and one count of gross sexual imposition to an aggregate prison term of 22 years).

*Glover*, 1st Dist. Hamilton No. C-220088, 2023-Ohio-1153, at ¶ 77.

{¶ 57} By statute, "penalties for violent crimes are [already] enhanced when the victim suffered serious physical injury." *Id*. at ¶ 76. In this case, the trial court imposed the maximum sentence on all counts except for trafficking. This court does not demean the impact on the victims or the loss of a beloved family member that resulted from the loss of control of Hayes's vehicle when stop sticks were deployed on Solon Road during the police pursuit early on a Sunday afternoon.

{¶ 58} However, we do not hold a firm conviction and belief that the evidence supports the imposition of an aggregate sentence of 71 and one-half years. Therefore, this court may vacate or modify the trial court's sentence. *Gwynne*, Slip Opinion No. 2022-Ohio-4607, at ¶ 27, *Glover* at ¶ 103, citing R.C. 2953.08(G)(2).

{¶ 59} The court considered that the state and victims in *Glover* agreed to a 15-year sentence if Glover pleaded guilty, but Glover decided to go to trial. At sentencing after trial, the state recommended a 20- to 25-year term, and the appellate court determined that a 25-year term was appropriate. The court also stated the appeal did not address the consecutive nature of the gun specifications but determined it was "relevant to our proportionality determination because we consider the aggregate sentence." *Id.* at ¶ 105.

{¶ 60} Due to its finding that a 25-year aggregate term was reasonable, the court "default[ed] to a single seven-year sentence for aggravated robbery" and "six firearm specifications, three years each" to be served prior to the robbery sentence and consecutive to each other and the seven-year robbery term for an aggregate term of 25 years. *Id.* at ¶ 106.

{¶ 61} Hayes's conviction was pursuant to a plea agreement. Clearly the parties did not agree on prison terms, but Hayes pleaded guilty to one- and three-year firearm specifications on some charges. Due to this court's firm belief that the record clearly and convincingly does not support the trial court's proportionality finding in support of an aggregate sentence of 71 and one-half years, we are

authorized by R.C. 2953.08(G)(2) to increase, reduce, or modify the sentences in this case. *Gwynne IV*, Slip Opinion No. 2022-Ohio-4607, at ¶ 29.

{¶ 62} As part of the sentence modifications, this court reiterates that the Reagan Tokes Law advisements were provided during the plea hearing and addressed during the sentencing hearing. At the sentencing, the trial court announced that the first-degree felony involuntary manslaughter count would carry an 11-year term. The state inquired:

> State: Just to be clear on each — for an F1, for example, which was imposed on multiple cases that he has a prison sentence from anywhere from 11 to 16 and one-half years.
>
> Court:       Yes.
>
> State: Because of Reagan Tokes.
>
> Court:       That's true. We discussed [it] at the time of the plea as well. Sir, do you understand, by nature, Reagan Tokes could result in additional time in essence being imposed if the prison chooses for the circumstances for the reasons we earlier discussed to keep you in prison longer? Do you understand?
>
> Hayes:       Yes.

(Tr. 134-135.) The defense objected to the law as unconstitutional at both hearings, arguments that were recently resolved in favor of constitutionality in *State v. Hacker*, Slip Opinion No. 2023-Ohio-2535. This court's modification of sentences also includes consideration of the Reagan Tokes Law requirements. Pursuant to R.C. 2929.144(B)(2) for consecutive sentences, the aggregate maximum term is determined by the longest minimum term for the most serious felony being sentenced. Here, that is the involuntary manslaughter count with the 11-year

minimum and 16 and one-half year maximum.  The maximum term is determined solely from the longest minimum term or definite term for the most serious felony being sentenced.

{¶ 63}  The evidence supports the modification of Hayes's aggregate prison sentence as follows.  The asterisks indicate that the offense is a qualifying offense under the Reagan Tokes Law.[5]

CR-21-660865-A

| Charge | Current Sentence | Modification | Total |
| --- | --- | --- | --- |
| Trafficking | 24 months served consecutively to other cases. | Concurrent | 24 months served concurrently with other cases. |

CR-22-667269-A

| Charge | Prior Sentence | Modification | Total |
| --- | --- | --- | --- |
| *Aggravated robbery with one-year firearm specification | One-year firearm specification served prior and consecutively to 11-year maximum base sentence served consecutively to other cases. | 11 to 16.5 years per Reagan Tokes. | One-year firearm specification served prior and consecutively to 11 to 16.5 year maximum base sentence served consecutively to other cases. |

CR 22-666541-A

---

[5] "If the offender is being sentenced for more than one felony, if one or more of the felonies is a qualifying felony of the first or second degree, and if the court orders that all of the prison terms imposed are to run concurrently, the maximum term shall be equal to the longest of the minimum terms imposed on the offender under division (A)(1)(a) or (2)(a) of section 2929.14 of the Revised Code for a qualifying felony of the first or second degree for which the sentence is being imposed plus fifty per cent of the longest minimum term for the most serious qualifying felony being sentenced." R.C. 2929.144(B)(3).  The most serious offense in this case is the involuntary manslaughter count.

| Charge | Prior sentence | Modification | Total |
|---|---|---|---|
| *Aggravated robbery with three-year firearm specification | Three-year firearm specification prior and consecutive to 11-year maximum base sentence. Consecutive to other cases. (Eighteen-month sentence on grand theft charge merged into the aggravated robbery count.) | 11 to 16.5 years per Reagan Tokes. The sentence will be served concurrently with the other counts in this case and consecutively to other cases. | Three-year firearm specification served prior and consecutively to 11-16.5 year maximum base sentence. |
| *Felonious assault with three-year firearm specification | Three-year firearm specification prior and consecutive to 8-to-12-year maximum base sentence. Consecutive to other cases. | 8 to 12 years per Reagan Tokes. The sentence will be served concurrently with the other counts in this case. | Three-year firearm specification prior and consecutive to 8 to 12-year maximum base sentence served concurrently with the other counts in this case. |
| Having a weapon while under disability | Three-year sentence served consecutively to other cases. | The sentence will be served concurrently with the other counts in this case. | Three years concurrent with the other counts in this case. |

CR-21-665938-A

| Charge | Prior sentence | Modification | Total |
|---|---|---|---|
| *Involuntary manslaughter with one-year firearm specification | One-year firearm specification prior and consecutive to 11-year maximum base sentence consecutive to other cases. | 11-to-16.5-year term per Reagan Tokes. One-year firearm specification merges with one-year specification for failure to | 11 to 16.5 year term served consecutively to other cases. Firearm specification merges with failure to comply specification. |

| Charge | Prior sentence | Modification | Total |
|---|---|---|---|
| | | comply. R.C. 2929.14(B)(1)(b).[6] | |
| Aggravated vehicular assault | One-year firearm specification plus 60-month base sentence consecutive to other cases. | One-year firearm specification merges with one-year firearm specification for failure to comply. Sixty-month base sentence served concurrently with other aggravated assault vehicular count. | 60 months concurrent with other counts. Firearm specification merges with failure to comply specification. |
| Aggravated vehicular assault | One-year firearm specification plus 60 months base sentence consecutive to other cases. | One-year firearm specification merges with one-year firearm specification for failure to comply. Sixty-month base sentence served concurrently with other aggravated assault vehicular count. | 60 months concurrent with other cases. Firearm specification merges with failure to comply specification. |
| Failure to comply with one-year firearm specification | One-year firearm specification prior and consecutive to 36-month base sentence consecutive to other cases. | No change. | One-year firearm specification prior and consecutive to 36-month base term consecutive to other cases. |

---

[6] Except as permitted under R.C. 2929.14(B)(1)(g), which does not apply in this case, R.C. 2929.14(B)(1)(b) prohibits a court from imposing multiple consecutive prison terms on multiple firearm specifications for "felonies committed as part of the same act or transaction." *State v. Hardnett*, 8th Dist. Cuyahoga No. 107038, 2019-Ohio-3090, ¶ 7. For purposes of R.C. 2929.14(B)(1)(b), "transaction" has been defined as "'a series of continuous acts bound together by time, space and purpose, and directed toward a single objective.'" *State v. Adkins*, 8th Dist. Cuyahoga Nos. 109184 and 109185, 2021-Ohio-1294, ¶ 17, quoting *State v. Wills*, 69 Ohio St.3d 690, 691, 635 N.E.2d 370 (1994), quoting *State v. Caldwell*, 9th Dist. Summit No. 14720, 1991 Ohio App. LEXIS 5879 (Dec. 4, 1991).

| Charge | Prior sentence | Modification | Total |
|---|---|---|---|
| Carrying a concealed weapon | 18 months consecutive to other cases. | 18 months concurrent with other cases. | 18 months concurrent with other cases. |

Summary

| | Specifications | Consecutive Terms | Total |
|---|---|---|---|
| CR-21-660865-A | None | None | None (24 months concurrent only) |
| CR-22-667269-A | One year | 11 to 16.5 years | 12 to 16.5 years consecutive |
| CR 22-666541-A | Six years | 11 to 16.5 years | 17 to 22.5 years consecutive |
| CR-21-665938-A | One year | 14 years | 15 to 16.5 years consecutive |
| | | | |
| Total Term | Eight years | 36 years | 8 years of firearm specifications served prior and consecutively to a definite prison term of 36 months and an indefinite prison term of 33-49.5 years. |

Thus, we modify Hayes's prison sentences for an aggregate term of eight years of firearm specifications served prior and consecutively to a definite prison term of thirty-six months and an indefinite prison term of 33-49.5 years.

{¶ 64} In addition, the trial court informed Hayes during the plea that the failure to control count in CR-21-665938-A was subject to a Class one lifetime driver's license suspension and six points against his license. The trial court failed

to impose the suspension at sentencing, and we remand the case to impose this suspension.

{¶ 65} We sustain Hayes's assignment of error and remand the case to the trial court to modify the sentences and impose the driver's license suspension consistent with this opinion. We affirm the trial court's judgment in all other respects.

## IV. Conclusion

{¶ 66} The case is modified and remanded to the trial court to impose sentence pursuant to this opinion.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, ADMINISTRATIVE JUDGE

EILEEN A. GALLAGHER, J., CONCURS;
EILEEN T. GALLAGHER, J., CONCURS IN JUDGMENT ONLY (WITH SEPARATE OPINION)

EILEEN T. GALLAGHER, J., CONCURRING IN JUDGMENT ONLY:

{¶ 67} I concur in judgment only with the majority opinion and its determination that the record does not clearly and convincingly support the trial court's finding that Hayes's aggregate prison term is not disproportionate to the seriousness of his offenses or the danger he poses to the public. I write separately to address the Ohio Supreme Court's recent decision in *State v. Gwynne*, Slip Opinion No. 2023-Ohio-3851 ("*Gwynne V*").

{¶ 68} In *Gwynne V*, the Ohio Supreme Court recently granted the state's motion for reconsideration and vacated its prior decision in *State v. Gwynne,* Slip Opinion No. 2022-Ohio-4607 ("*Gwynne IV*"). In doing so, the lead opinion in *Gwynne V* found that (1) *Gwynne IV*'s conclusion that R.C. 2953.08(G)(2) requires an appellate court to review the record de novo is contrary to the plain language of the statute, (2) R.C. 2929.14(C)(4) does not require express consideration of the aggregate prison term that results from the imposition of consecutive sentences, and (3) the record did not clearly and convincingly fail to support the trial court's consecutive-sentence findings. *Id.* at ¶ 16, 18-24. Accordingly, the lead opinion granted the state's motion for reconsideration, vacated the prior decision in *Gwynne IV*, and affirmed the appellate court's judgment upholding the defendant's 65-year sentence.

{¶ 69} As recognized by Justice Stewart in the dissenting opinion, the lead opinion in *Gwynne V* consists of three justices, while the fourth justice determined that the motion for reconsideration was justified on procedural grounds. *Id.* at ¶ 47

(Stewart, J., dissenting). In the absence of a majority on the issues of law developed in the lead opinion, it is unclear what weight appellate courts should afford the lead opinion's discussion moving forward. Until further clarity and consensus is reached by the highest court in this state, I will continue to follow the standard of review set forth by a majority of the court in *Gwynne IV*.

{¶ 70} In doing so, I note that I do not disagree with *Gwynne V*'s recognition that a plain reading of R.C. 2953.08(G) does not support a de novo standard of review. And yet, consistent with the analysis contained in *Gwynne IV*, I adamantly believe that the proportionality finding contained in R.C. 2929.14(C)(4) requires the trial court to consider the aggregate prison term resulting from the imposition of multiple, consecutive sentences. *See Gwynne V* at ¶ 81, 94 (Brunner, J., dissenting). As articulated by Justice Brunner:

> R.C. 2929.14(C)(3) requires a proportionality analysis, meaning that a sentencing court must consider the aggregate term of imprisonment to be imposed because, without such consideration, there is no coherent way to evaluate whether multiple, consecutive sentences are proportional to an offender's overall conduct for which the sentences have been imposed.

*Id.* at ¶ 81.

{¶ 71} Based on the foregoing, I agree that the lead opinion in *Gwynne V* adopts a narrow interpretation of the proportionality requirement in R.C. 2929.14(C)(4) that will render it "virtually impossible for any defendant to ever successfully challenge an aggregate sentence imposed as a result of running multiple individual sentences consecutively." *Id.* at ¶ 48 (Stewart, J., dissenting). The lead

opinion's objective approach promotes boilerplate recitations above the overarching purposes and principles of felony sentencing.

{¶ 72} Turning to the facts of this case, I do not wish to suggest that Hayes's conduct over the course of several days was somehow less serious than similarly situated offenders. Unfortunately, Hayes's conduct in this case reflects a growing pattern of armed violence in this community. Perhaps more tragic, is the common age these offenders tend to share. Consistent with this trend, there is no dispute that Hayes, then a teenager, engaged in a heinous pattern of conduct that left a trail of emotional and physical injuries. He facilitated a firearm to attack innocent members of this community in their most vulnerable states and recklessly caused the death of a woman while evading the police. The resulting harm caused by his crime spree will be lasting, and the trial court was justified in utilizing R.C. 2929.14(C)(4) to severely punish Hayes.

{¶ 73} As previously discussed, however, a trial court must consider the aggregate sentence that inherently results from its application of R.C. 2929.14(C)(4) when multiple terms of imprisonment are ordered to run consecutively. Thus, while the stacking of *some* consecutive sentences was warranted in this case, the trial court was required to contemplate the significance of a sentence akin to a term of life when making its proportionality finding for the imposition of consecutive sentences on all counts — across multiple cases.

{¶ 74} In this case, the record reflects that the trial court did not contemplate the total length of the defendant's sentence until after the consecutive terms were

imposed and defense counsel sought clarification as to the court's aggregate-sentence calculations. At that time, the court sought the parties' assistance and the state suggested that its calculation amounted to "71.5 [years]." (Tr. 136-138.) I do not wish to infer that the trial court did not consider the implications of its lengthy sentence in this matter. Nevertheless, applying the standard articulated in *Gwynne IV*, I agree with the majority's conclusion that the aggregate sentence exceeded what is proportionate to the sentence necessary to protect the public and punish Hayes for his conduct. Under the terms of the sentence imposed by the trial court, Hayes would be released from prison following his 91st birthday although he committed most of the underlying offenses when he was just 18 years old. In my view, the modified sentence imposed by this court carefully balances the relevant mitigating and aggravating circumstances involved in this case and imposes a prison term that is both proportionate to the severity of Hayes's conduct and consistent with sentences imposed on similarly situated offenders in this state.

{¶ 75} As previously mentioned, there is an epidemic of violence taking place in this county. Continued measures by community leaders, together with public support, is necessary to address the heightening levels of gun-related violence that has resulted in tragic outcomes such as those involved in this case. It is my position, however, that stacking prison terms in order to impose what amounts to a life sentence on such offenders is not a practical, governmental solution. It neither addresses the issues underlying the growing violence in this community, serves the

rehabilitative goals of felony sentencing, or promotes the best use of public resources.