[Cite as *State v. Walker*, 2024-Ohio-1781.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                               No. 113103

    v.                                   :

VICTOR WALKER,                          :

    Defendant-Appellant.         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 9, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-679139-A

---

## *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Shannon Musson, Assistant Prosecuting
Attorney, *for appellee.*

Joseph V. Pagano, *for appellant.*

MARY EILEEN KILBANE, J.:

{¶ 1} Defendant-appellant Victor Walker ("Walker") appeals his sentence following his guilty pleas, contending that the trial court erred in its imposition of consecutive sentences. For the following reasons, we affirm.

**Factual and Procedural History**

{¶ 2} On March 3, 2023, in Cuyahoga C.P. No. CR-23-679139 ("Case 679139"), a Cuyahoga County Grand Jury indicted Walker on seven counts of rape in violation of R.C. 2907.02(A)(1)(b); ten counts of sexual battery in violation of R.C. 2907.03(A)(5); and three counts of rape in violation of R.C. 2907.02(A)(2). Walker allegedly engaged in inappropriate sexual conduct with sisters, Eq.S. and Er.S., and J.E. between 1994 and 2008. All victims were minors. The charges also alleged that the sexual conduct between Walker and Eq.S. resulted in Eq.S. conceiving and delivering three children: Q.S., K.S., and I.S.

{¶ 3} On March 23, 2023, Walker pleaded not guilty to the indictment.

{¶ 4} On June 6, 2023, the trial court conducted a plea hearing where Walker withdrew his former pleas and pleaded guilty to amended Counts 3, 9, and 15, each charging rape in violation of R.C. 2907.02(A)(2). The trial court nolled all remaining counts. Walker acknowledged his charges were subject to a mandatory prison sentence and no early release from prison. The court noted mandatory postrelease control and the agreed recommendation that Count 15 run concurrently to Counts 3 and 9, with a range of three to ten years on each count. The court informed Walker that he was to be classified as a sexual predator, and Walker agreed to no contact with the victims. The trial court referred Walker for a presentence investigation and report ("PSI").

{¶ 5} On July 14, 2023, the state submitted a sentencing memorandum that identified the alleged sexual abuse of the three victims. The sentencing

memorandum detailed Walker's simultaneous sexual relationships with Eq.S., Er.S., and their mother, G.J. Eq.S. and Er.S. alleged that Walker initiated inappropriate sexual conduct with them when they were seven and six years old, respectively. The memorandum discussed the third victim, J.E., who allegedly met Walker through her mom when J.E. was eight or nine years old, and the sexual assault J.E. endured for approximately eight months.

{¶ 6} The sentencing memorandum stated that a sexual assault kit was collected from Er.S. on July 30, 2000, pursuant to Er.S.'s claims of sexual abuse by Walker. Er.S. subsequently recanted those allegations, and the case was closed. At an unspecified date — many years later — the Cuyahoga County Sexual Assault Kit Task Force ("SAKTF") reopened the investigation. The SAKTF investigation revealed allegations of sexual abuse by Walker against J.E., Eq.S., Er.S., and Er.S.'s three children — who Walker allegedly fathered; terminations of pregnancies at Walker's insistence; and Walker contacting Er.S. and asking her not to cooperate with the investigation. The SAKTF investigation led to the criminal charges against Walker.

{¶ 7} On July 19, 2023, the trial court conducted a sentencing hearing at which Eq.S., Er.S., and J.E. provided victim-impact statements. The sisters, Eq.S. and Er.S., indicated Walker, whom they considered a father figure, repeatedly raped them, manipulated them, and destroyed their family relationships. Eq.S. stated that Walker is the father of her three children yet he refused to acknowledge paternity. The sisters also stated that Walker's pervasive sexual abuse caused ongoing

psychological damage. Both sisters asked the court to impose the maximum sentence. J.E. testified that her interactions with Walker severely impacted relationships with her mother and church as well as her self-confidence. J.E. forgave Walker but asked the court to sentence him to the maximum penalty.

{¶ 8} Walker spoke on his own behalf:

DEFENDANT: As I stood before you [at the plea hearing,] all I can see at that particular time as I stood before you was my wife's face.

* * *

As I stood before you at that particular time, you know, the water flowing from my eyes was very sincere. That was from God's water from Israel to Egypt. I truly apologize.

What was going through my mind at that particular time was my wife's face, my brother that I take care of that has multiple sclerosis. We moved him in there with us almost two years ago and we have been taking care of him ever since. He has 97 percent disability.

Prior to that we moved my mother in with us and she —

* * *

And she has multiple sclerosis as well and so we took care of her until she crossed over, which was recent. I've been pretty much dealing with a lot, but since that time, I'm a spiritually compassionate being. I am one of God's angels.

* * *

I'm a spiritually compassionate individual. I've worked in public service for almost 30 years, 12 years with the City of Cleveland, and then 11 years with Homeland Security.

I and my wife established a company of health and wellness and beauty care business. We've been established for, like, four years. And today with humility, I stand before you and I ask you to look at

my spirit. There are things that has changed over numerous years. I abandoned the negative deities decades ago.

THE COURT: Hold on a second.

DEFENDANT: I abandoned the deities, those chambers of my mansion that kept me in a fog of submission and unconscious state. In other words, my behavior, yes, it was inappropriate at that time.

THE COURT: Your —

DEFENDANT: I said at that time I was under foggy submission.

THE COURT: I can't understand you.

DEFENDANT: What I'm saying is at that time I was under a fog of submission.

THE COURT: Who were you submitting to?

DEFENDANT: A fog of submission. That means that my thinking probably was impaired at that time.

THE COURT: Your thinking was impaired?

DEFENDANT: At that time.

THE COURT: What impaired your thinking at that time?

DEFENDANT: At that particular point in time it was drugs.

THE COURT: For 20 years?

DEFENDANT: Way back when.

THE COURT: Okay.

DEFENDANT: You know, self-corrective measures were in place where I took action.

COURT: Were you an angel of God then?

DEFENDANT: No. I stepped away from there then. I got a way [sic] and I think that's probably what pretty much took me in another direction. Since then, you know, I pretty much got things together. My karma has been very blissful.

THE COURT: Your?

DEFENDANT: Karma, yes, has been very blissful. It was over 20 years ago when I got things pretty much together. I feel that my past should not define who I am now. I'm a different person. I am a very different person.

I've made great strides and great steps since then. Everybody makes mistake[s]. Mine wasn't to hurt intentionally the individuals that I had. I'm not that individual.

THE COURT: You're not today or then?

DEFENDANT: Not today.

THE COURT: But you were then?

DEFENDANT: Again, I can't explain those actions. They were drug induced. I can't explain, but since then, after that, it was a 360 change. I'm being very forthright and honest with you.

THE COURT: Okay.

DEFENDANT: I'm not a predator and unfortunately I don't like that title, but that's what it falls up under.

Tr. 48-52.

{¶ 9} Following the victims' statements and Walker's comments, the trial court sentenced Walker. The trial court considered the record, the oral statements made at the sentencing hearing including the victim-impact statements, the PSI, the state's sentencing memorandum, and the plea negotiations. The trial court referenced Walker's criminal history and stated Walker's actions represented "the

most serious form of the offense." Tr. 55. Further, the trial court found that regardless of Walker's age, the fact that he forced sexual relations upon children increased his likelihood of recidivism.

{¶ 10} The trial court sentenced Walker to 10 years each on Counts 3, 9, and 15, with Counts 3 and 9 running concurrent to each other and Count 15 running consecutive to Counts 3 and 9, for a total of 20 years with no possibility of early release. The trial court imposed five years of mandatory postrelease control and classified Walker as a sexual predator. In support of the consecutive sentence, the trial court stated:

> The Court must make the following findings to support the record in the imposition of consecutive sentences that it is necessary to punish Mr. Walker and to protect the public from future crime, that this sentence is not disproportionate to the seriousness of the contact and the danger posed by the Defendant and that two or more offenses are part of one or more course of conduct and that the harm caused is so great or unusual that a single prison term would not adequately reflect the seriousness of the conduct.

Tr. 57.

{¶ 11} On August 17, 2023, Walker filed a timely notice of appeal presenting this sole assignment of error: "Appellant's sentence is clearly and convincingly not supported by the record and is contrary to law."

**Legal Analysis**

{¶ 12} Walker contends that the trial court improperly imposed consecutive sentences. In support of this argument, Walker argues that (1) the trial court did not make the necessary statutory findings required by R.C. 2929.14(C)(4); (2) the trial

court did not consider the aggregate sentence that resulted from the imposition of consecutive sentences; and (3) the record did not clearly and convincingly support the trial court's findings made pursuant to R.C. 2929.14(C)(4).

{¶ 13} We initially note that Walker's arguments that rely on the standard of review identified in *State v. Hayes*, 8th Dist. Cuyahoga No. 111927, 2023-Ohio-4119 ("*Hayes I*") are inapplicable; this court recently vacated *Hayes I* in *State v. Hayes*, 8th Dist. Cuyahoga No. 111927, 2024-Ohio-845 ("*Hayes II*"), and confirmed the application of a deferential standard in our appellate review of consecutive-sentence findings. *Hayes II at* ¶ 23.[1] Pursuant to R.C. 2953.08(G)(2), an appellate court must affirm an order of consecutive sentences unless it "clearly and convincingly" finds that the record does not support the trial court's findings in support of consecutive sentences. *State v. Simmons*, 8th Dist. Cuyahoga No. 107144, 2019-Ohio-459, ¶ 11; *see State v. Jones*, Slip Opinion No. 2024-Ohio-1083, ¶ 13. "This is an extremely deferential standard of review." *State v. Venes*, 2013-Ohio-1891, 992 N.E.2d 453, ¶ 21 (8th Dist.).

{¶ 14} A trial court may impose consecutive sentences only if the trial court makes the required R.C. 2929.14(C)(4) findings. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 20-24. Under R.C. 2929.14(C)(4), a trial court may order prison terms to be served consecutively if it finds "[(1)] the

---

[1] Pursuant to the Ohio Supreme Court's recent decision in *State v. Gwynne*, Slip Opinion No. 2023-Ohio-3851 ("*Gwynne V*") — that vacated its prior decision in *State v. Gwynne*, Slip Opinion No. 2022-Ohio-4607 ("*Gwynne IV*") — we follow the pre-*Gwynne IV* deferential standard of review in our review of consecutive-sentence findings.

consecutive service is necessary to protect the public from future crime or to punish the offender and [(2)] that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." Further, the court must also find any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4).

{¶ 15} Trial courts need not recite the statutory language word for word. *Bonnell* at ¶ 29. "'[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld.'" *State v. Reindl*, 8th Dist. Cuyahoga Nos. 109806, 109807, and 109808, 2021-Ohio-2586, ¶ 15, quoting *Bonnell* at ¶ 29. The trial court is not required to state reasoning in support of its findings, but the statutory findings "must be found in the record and * * * incorporated into the sentencing entry." *Reindl* at 15, quoting *Bonnell* at ¶ 37.

{¶ 16} Walker asserts the trial court did not make the statutory findings that consecutive sentences were not disproportionate to the danger he posed to the public and that the consecutive sentences were necessary to protect the public. However, the record reflects that at the sentencing hearing, the trial court made the necessary R.C. 2929.14(C)(4) statutory findings and incorporated those findings into the sentencing entry.

{¶ 17} Walker claims that the trial court needed to consider the aggregate sentence that resulted from the imposition of consecutive sentences. Walker cites no case law in support of this argument, and we find the argument is without merit. *Gwynne V* at ¶ 94; *see Hayes II* at ¶ 33 (E.T. Gallagher, J., concurring in judgment only), citing *Gwynne IV* at ¶ 16, 18-24 ("R.C. 2929.14(C)(4) does not require express consideration of the aggregate prison term that results from the imposition of consecutive sentences.").

{¶ 18} Walker also contends that the record does not "clearly and convincingly" support the trial court's R.C. 2929.14(C)(4) findings. Here, the trial court made the following findings on the record at the sentencing hearing:

> THE COURT: Mr. Walker, I don't think you get it. I don't think you get it. I thought you did at your plea. I absolutely thought you did at your plea because of the tears in your eyes, the time it took to go through the entire plea hearing because of how emotional you were. All of that struck me as remorse. It finally hit you what you did to these children, to these babies. That's where I thought you were coming from, but you let me know today that I was wrong.
>
> DEFENDANT: No, I didn't.

THE COURT: That you were thinking about yourself and you were thinking about the people that you surrounded yourself with since they realized that you weren't loving them, that you were abusing them and they left you. You made that abundantly clear to me today. I will keep my statements to that because I'm a judicial officer who does not let emotion get in the way of my job.

Before imposing sentence, I will note for the record that I have considered the record, the oral statements made here today, the Presentence Investigation Report, the State's sentencing memorandum and the plea negotiations. The Court is considering the victim impact statements.

The Court must and has formulated this decision based upon the overriding principles and purposes of felony sentencing, namely to protect the public from future crime by you and to punish you using the minimum sanctions that this Court determines accomplishes those purposes without imposing an unnecessary burden on state or local government resources.

To achieve these purposes, I have considered the need for incapacitation, deterrence, and rehabilitation. I've considered the seriousness and recidivism factors relevant to the offense and offender. I do consider this the most serious form of the offense.

Regardless of your age, Mr. Walker, for you to have the desire, the ability to force sexual relations upon children increases the recidivism factors relevant to these offenses. It doesn't matter how old you are. This can never happen again to anyone else. It's not drug induced. Stop convincing yourself of that.

* * *

THE COURT: You know what, quite frankly, your lack of criminal history is reflective of you keeping it in the house. You took it out on these girls in your house in your care. You didn't have to go out and rape people in the community because you had them at home.

The Court must and is ensuring that the sentence being imposed does not demean the seriousness of the crimes, the impact on the victims, and is consistent with other similar offenses committed by like offenders. Finally, the sentence is not based upon any impermissible

purpose, namely the race, ethnic background, gender or religion of Mr. Walker.

Tr. 53-56.

{¶ 19} Upon review, we find that the trial court ordered and reviewed the PSI; reviewed and considered the state's sentencing memorandum; heard and considered the victim-impact statements of Eq.S., Er.S., and J.E.; and heard and considered Walker's statements at the plea and sentencing hearings. The trial court noted Walker's lack of criminal history reflected the fact that his crimes occurred primarily with members of his household and, therefore, he did not need to seek members of the public at large; Walker incorrectly concluded this statement meant his limited criminal history indicated he did not pose a danger to the public or his community. The trial court's statements reflect that the court considered the nature of Walker's crimes to be very serious, with a likelihood of recidivism.

{¶ 20} Walker argues that by accepting responsibility for his actions and expressing remorse, the record did not support consecutive sentences. A review of the record demonstrates that Walker stated, "I truly apologize" during the sentencing hearing but proceeded to reference his wife and brother; it was unclear to whom Walker's apology was directed. Walker's attorney, not Walker, stated Walker accepted responsibility for his acts. Further, Walker told the trial court that when he acted against the victims, his thinking was probably impaired due to drugs and "[e]verybody makes mistake[s]." Tr. 52. These comments, alone, did not necessarily demonstrate genuine remorse, show Walker no longer posed a risk to

society, or support the conclusion that the record "clearly and convincingly" does not support consecutive sentences. *See State v. Ogletree*, 11th Dist. Lake No. 2019-L-009, 2019-Ohio-3999, ¶ 25 (where the trial court found that the defendant did not display genuine remorse, the court's sentence was not clearly and convincingly unsupported by the record or otherwise contrary to law).

{¶ 21} We are unable to "clearly and convincingly" find that the record does not support the trial court's findings under R.C. 2929.14(C)(4). For these reasons, we find that the trial court complied with the statutory requirements when it imposed consecutive sentences, and we overrule Walker's sole assignment of error.

{¶ 22} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

KATHLEEN ANN KEOUGH, A.J., and
FRANK DANIEL CELEBREZZE, III, J., CONCUR