[Cite as *State v. Ayala*, 2025-Ohio-743.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                No. 113944

v.                                      :

EMILIO AYALA,                           :

    Defendant-Appellant.         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 6, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-685315-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Kristen Hatcher and Tyler W. Blair, Assistant Prosecuting Attorneys, *for appellee.*

Joseph V. Pagano, *for appellant.*

EILEEN A. GALLAGHER, A.J.:

{¶ 1} Emilio Ayala ("Ayala") appeals his 23-year prison sentence that was imposed after he pled guilty to various sex offenses. For the reasons that follow, we affirm the trial court's judgment.

## I. Facts and Procedural History

{¶ 2} On October 2, 2023, Ayala was charged in a ten-count indictment with rape, gross sexual imposition and kidnapping involving three child-victims who were all under the age of 13 when the offenses took place.

{¶ 3} On April 10, 2024, Ayala pled guilty to two counts of rape in violation of R.C. 2907.02(A)(2), one count of gross sexual imposition in violation of R.C. 2907.05(A)(4) and one count of sexual battery in violation of R.C. 2907.03(A)(1). Ayala's plea involved three different victims.

{¶ 4} On May 10, 2024, the court sentenced Ayala to nine years in prison for each of the rape convictions, five years in prison for gross sexual imposition and five years in prison for sexual battery. The court ran the prison sentences for each rape conviction and the gross sexual imposition conviction consecutively to one another and concurrently to the prison sentence for sexual battery, for an aggregate prison term of 23 years.

{¶ 5} Ayala appeals and raises the following assignments of error for our review:

I. Appellant's sentence is contrary to law because the record does not support the imposition of consecutive sentences.

II. Appellant was deprived of his right to due process and effective assistance of counsel under the Sixth Amendment to the United States Constitution and Art. I, § 10 of the Ohio Constitution.

## II. Law and Analysis

### a. Felony Sentencing

#### i. Standard of Review

{¶ 6} R.C. 2953.08(G)(2) provides, in part, that when reviewing felony sentences, if this court "clearly and convincingly" finds that (1) "the record does not support the sentencing court's findings under . . . (C)(4) of section 2929.14 . . . " or (2) "the sentence is otherwise contrary to law," then we may conclude that the court erred in sentencing. *See also State v. Marcum*, 2016-Ohio-1002. In *State v. Jones*, 2020-Ohio-6729, ¶ 39, the Ohio Supreme Court clarified that R.C. 2953.08(G)(2) "does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12."

{¶ 7} A sentence is not clearly and convincingly contrary to law "where the trial court considers the purposes and principles of sentencing under R.C. 2929.11 as well as the seriousness and recidivism factors listed in R.C. 2929.12, properly applies postrelease control, and sentences a defendant within the permissible statutory range." *State v. A.H.*, 2013-Ohio-2525, ¶ 10 (8th Dist.).

{¶ 8} Pursuant to R.C. 2929.11(A), the three overriding purposes of felony sentencing are "to protect the public from future crime by the offender and others," "to punish the offender" and "to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden of state or local government resources."

Additionally, the sentence imposed shall be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact on the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B).

{¶ 9} Furthermore, in imposing a felony sentence, "the court shall consider the factors set forth in [R.C. 2929.12(B) and (C)] relating to the seriousness of the conduct [and] the factors provided in [R.C. 2929.12(D) and (E)] relating to the likelihood of the offender's recidivism . . . ." R.C. 2929.12. However, this court has held that "[a]lthough the trial court must consider the principles and purposes of sentencing as well as the mitigating factors, the court is not required to use particular language or make specific findings on the record regarding its consideration of those factors." *State v. Carter*, 2016-Ohio-2725, ¶ 15 (8th Dist.).

### ii. Consecutive Sentences

{¶ 10} "[T]o impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry . . . ." *State v. Bonnell*, 2014-Ohio-3177, ¶ 37. Pursuant to R.C. 2929.14(C)(4), the court must find consecutive sentences are "necessary to protect the public from future crime or to punish the offender," "not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public" and at least one of the following three factors:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction . . ., or was under postrelease control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 11} R.C. 2953.08(G)(2), which guides our review of consecutive felony sentences, "compels appellate courts to modify or vacate sentences if they find by clear and convincing evidence that the record does not support any relevant findings under . . . (C)(4) of section 2929.14[.]" *Marcum*, 2016-Ohio-1002, at ¶ 22. *See also State v. Roberts*, 2017-Ohio-9014, ¶ 10 (8th Dist.) ("[i]f the court made the required findings in order to impose consecutive sentences, we must affirm those sentences unless we 'clearly and convincingly' find that the record does not support the court's findings," quoting R.C. 2953.08(G)(2)); *State v. Venes*, 2013-Ohio-1891, ¶ 19 (8th Dist.).

{¶ 12} In Ayala's first assignment of error, he concedes that the court made "the rote findings required by the statute" at his sentencing hearing. However, Ayala argues that the "record does not support the findings that consecutive sentences are necessary to protect the public from future crime or that the 23-year prison sentence is not disproportionate to [the] seriousness of [his] conduct." Specifically, Ayala argues that "the court failed to consider known mitigatory evidence" consisting of

Cuyahoga County Division of Children and Family Services' ("CCDCFS") records about Ayala.

{¶ 13} To support this argument, Ayala cites this court's opinion in *State v. McClarin*, 2019-Ohio-5343 (8th Dist.). In *McClarin*, the defendant was charged with ten counts of rape and four counts of kidnapping involving four child-victims who were under 13 years old at the time of the offenses. *Id*. at ¶ 3. During discovery, the trial court conducted an in camera review of "potentially exculpatory" records from CCDCFS. *Id*. at ¶ 4. Subsequently, McClarin pled guilty to seven counts of rape and was sentenced to 40 years in prison. *Id*. at ¶ 4, 9.

{¶ 14} McClarin appealed his sentence to this court, arguing that the "trial court erred in failing to inquire about exculpatory evidence that was noted by defense counsel but never discussed in detail." *Id*. at ¶ 1. McClarin's argument was based on the trial court's consideration of "the purposes and principles of sentencing set forth in R.C. 2929.11 and the seriousness and recidivism factors outlined in R.C. 2929.12." *Id*. at ¶ 10. This court overruled McClarin's assignment of error, finding that "the [trial] court was aware of the 'potentially exculpatory evidence' and that the court considered the relevant sentencing factors required by R.C. 2929.11 and 2929.12." *Id*. at ¶ 16.

{¶ 15} *McClarin* was decided before the Ohio Supreme Court limited appellate review of felony sentencing in *State v. Jones*, 2020-Ohio-6729, ¶ 39, which held that R.C. 2953.08(G)(2) "does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by

the record under R.C. 2929.11 and 2929.12." McClarin did not appeal the consecutive nature of his prison sentence pursuant to R.C. 2929.14. Therefore, we find *McClarin* inapplicable to this case.

{¶ 16} We review Ayala's consecutive sentences under the standard set forth in R.C. 2929.14(C).

{¶ 17} The court made the following findings on the record at Ayala's sentencing hearing regarding consecutive sentences:

> I am imposing consecutive terms, and I'm making findings pursuant to 2929.14(C), that it is necessary to punish you by imposing consecutive terms, and that consecutive terms are not disproportionate to the seriousness of your conduct and not disproportionate to the danger you pose to the public. At least two of the multiple offenses were committed as part of one or more courses of conduct. And the harm caused by two or more of the multiple offenses committed was so great or unusual that no single prison term for any of the offenses committed as part of any course of conduct would adequately reflect the seriousness of your conduct.

{¶ 18} In this case, Ayala argues that the record does not support the court's finding that consecutive sentences were necessary to protect the public nor does the record support the court's finding that consecutive sentences were not disproportionate to the seriousness of Ayala's conduct.

{¶ 19} The prosecutor spoke at the sentencing hearing and stated that one of the victims disclosed "to a social worker at school" that Ayala had raped her when she was seven years old. The timing of the disclosure came about when she saw that Ayala "had a newborn child." Once this victim came forward, the other two victims also disclosed that Ayala sexually abused them when they were children.

{¶ 20} Detective Kristi Harvey of the Solon Police Department read into the record letters from two of the victims. The first victim wrote that the "suffering and emotional pain I experienced as a result of [Ayala] raping me has affected me since I was seven years old." She further wrote that she "kept this secret for seven years." She wrote that she "felt fear for that child" who was in Ayala's care and she "found out that [she] was not the only victim in [her] family." This victim felt "anxious, depressed, afraid" and had "trouble sleeping . . . every day of [her] life."

{¶ 21} The second victim referred to Ayala as "the person who stole my childhood . . . ." The second victim wrote that Ayala "has continued his life as if nothing ever happened. But what he did was everything to me. This person took away my innocence when I was only five. I can't remember a single moment of living as a carefree child." The second victim "battled severe trust issues, anxiety, depression, and a lack of love and respect for" herself. According the second victim's letter, "[b]ecause this happened at the hands of a family member" she "struggle[s] to trust anyone."

{¶ 22} Defense counsel also spoke at Ayala's sentencing hearing, "outlin[ing] several factors . . . that could indicate concurrent sentences . . . ." Defense counsel stated that Ayala "accepted responsibility for his conduct at pretty much the earliest opportunity" by pleading guilty on April 10, 2024, after a plea offer was made to him on April 9, 2024. Defense counsel noted that some of Ayala's "conduct" occurred when "he himself was a juvenile." According to defense counsel, Ayala did not have a "criminal history" aside from these offenses. "This is not someone who has

continued to go out and [wreak] havoc in the community." Defense counsel stated that Ayala "has been consistently employed" and "has been a responsible member of the community who provides for himself and his loved ones." Defense counsel also stated that "the documents that we were able to review" from CCDCFS indicate "physical and sexual abuse [of Ayala] by his biological father."

{¶ 23} The court found that "[t]hese offenses were going on" for "years and years and years." The court noted that the offenses to which Ayala pled guilty occurred from 2008 to 2016 and that the "victims would say that" Ayala was likely to reoffend. The court found that Ayala "devastated these families" and that the victims "were little kids. . . . Defenseless. Couldn't do anything. You had them . . . terrified, traumatized, and you stole their innocence, as cliché as it sounds." The court continued:

> So when it comes to the seriousness of your conduct pretty much every sentencing factor that is statutorily to be considered applies. It's your relationship with the victims that facilitated the offense. You were in a position . . . of trust where you should have been looking out for these kids. The harm is extremely significant. You heard about it. I read about it in the letters. You heard about it here today in court. And there's no prison term that can take away what happened. If only there were.

{¶ 24} Upon review, we find that, by clear and convincing evidence, the record supports the trial court's findings under R.C. 2929.14(C)(4). One of the victim's letters that was read into the record stated that she "feared" for Ayala's newborn child, which weighs in favor of the court's finding that consecutive sentences are necessary to protect the public from future crime by Ayala. This

statement also weighs in favor of the court's finding that consecutive sentences are not disproportionate to the danger Ayala poses to the public. Both victims' letters speak to the seriousness of Ayala's conduct, which the court found was not disproportionate to sentencing him to consecutive prison terms. Additionally, statements made at the sentencing hearing show that the three victims were between five and 11 years old when Ayala sexually abused them, which supports the court's finding that Ayala committed the offenses as part of a course of conduct. The two victim letters spoke of the "emotional pain" and devastation Ayala caused, which supports the court's finding that the "harm caused by two or more of the multiple offenses so committed was so great or unusual" that consecutive sentences were warranted. *See, e.g., State v. Walker*, 2024-Ohio-1781 (8th Dist.) (affirming consecutive sentences after the defendant pled guilty to multiple counts of raping sisters, who were "minors" at the time, over a 14-year span). In *Walker*, the trial court stated the following to support its imposition of consecutive sentences:

> Regardless of your age, Mr. Walker, for you to have the desire, the ability to force sexual relations upon children increases the recidivism factors relevant to these offenses. It doesn't matter how old you are. This can never happen again to anyone else.
>
> . . .
>
> You know what, quite frankly, your lack of criminal history is reflective of you keeping it in the house. You took it out on these girls in your house in your care. You didn't have to go out and rape people in the community because you had them at home.

*Id.* at ¶ 18.

{¶ 25} Accordingly, Ayala's first assignment of error is overruled.

### b. Ineffective Assistance of Counsel

{¶ 26} To succeed on a claim of ineffective assistance of counsel, a defendant must establish that his or her attorney's performance was deficient and that the defendant was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668 (1984). However, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance." *Id.* at 697. *See also State v. Bradley*, 42 Ohio St.3d 136 (1989).

{¶ 27} In Ayala's second assignment of error, he argues that he received ineffective assistance of trial counsel when his attorney "failed to properly present mitigatory evidence for the trial court's consideration at sentencing." Specifically, Ayala argues that his trial counsel "was ineffective by failing to ensure all this mitigatory evidence was properly provided to the court for consideration and also for not including it as part of the record."

{¶ 28} First, we note that "mitigatory evidence" is not an express factor to be considered under R.C. 2929.14(C)(4) when imposing consecutive sentences. Second, the Ohio Supreme Court has held that the "decision to forgo the presentation of additional mitigating evidence does not itself constitute proof of ineffective assistance of counsel." *State v. Keith*, 79 Ohio St.3d 514, 536 (1997).[1]

---

[1] We note that *Keith* is a death penalty case in which the Ohio Supreme Court held that "we implicitly recognized," in *State v. Johnson*, 24 Ohio St.3d 87, 91 (1986), "that the presentation of mitigating evidence" in the penalty phase of a capital murder trial "is a

{¶ 29} Third, it is undisputed that the mitigating evidence that Ayala refers to in this assignment of error was not made part of the record in the trial court and, thus, is not part of the record on appeal. "It is well settled that '[a]ppellate review is strictly limited to the record.'" *State v. Moon*, 2014-Ohio-108, ¶ 12 (8th Dist.), quoting *State v. Ellis*, 2009-Ohio-4359, ¶ 6 (8th Dist.). "A reviewing court cannot add material to the appellate record and then decide the appeal on the basis of the new material." *Moon* at ¶ 12. *See also State v. Curtis*, 2008-Ohio-916, ¶ 8 (8th Dist.) (holding that "when allegations of ineffective assistance of counsel hinge on facts not appearing in the record, the proper remedy is a petition for postconviction relief rather than direct appeal").

{¶ 30} Fourth, as to the prejudice prong of an ineffective assistance of counsel claim, Ayala summarily argues in his appellate brief that "[i]f the [trial] court had considered the records, it is reasonably probable that a lesser sentence would have been imposed." However, Ayala also argues in his appellate brief that, because the mitigating evidence is not part of the record, he "is deprived [of] a full and fair appellate review that would otherwise rightfully consider whether the [mitigating evidence] would have had any reasonable probability of changing the sentence the trial court imposed . . . ." In other words, Ayala has failed to show how his trial counsel's performance prejudiced him in this case.

{¶ 31} Accordingly, Ayala's second assignment of error is overruled.

---

matter of trial strategy." *Keith* at 530. On appeal, *Ayala* does not cite to a case where "mitigating evidence" was specifically at issue in the sentencing phase of a nondeath penalty proceeding, and our research revealed no such case as well.

{¶ 32} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, ADMINISTRATIVE JUDGE

LISA B. FORBES, J., and
KATHLEEN ANN KEOUGH, J., CONCUR